IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Cr. No. 06-055ML |
| | ) | |
| RAFAEL HUMERO MEDINA | ) | |

GOVERNMENT'S PRETRIAL MEMORANDUM

The defendant is charged in Count I with violating 21 U.S.C. § 841(a)(1) by possessing with intent to distribute 50 grams or more of cocaine base. The relevant portion of that statute provides:

> It shall be unlawful for any person knowingly or intentionally-
> (1) to possess with intent to distribute . . . a controlled substance.

In order to convict defendant of Count I, the government must prove three essential elements:

1. Defendant possessed 50 grams or more of a mixture or substance containing a detectable amount of cocaine base.

2. Defendant possessed the cocaine base with the specific intent to distribute it.

3. Defendant did this knowingly and intentionally.

The defendant is charged in Count II with violating 21 U.S.C. § 841(a)(1) by possessing with intent to distribute some amount of cocaine. The relevant portion of that statute provides:

> It shall be unlawful for any person knowingly or intentionally-
> (1) to possess with intent to distribute . . . a controlled substance.

In order to convict defendant of Count II, the government must prove three essential elements:

1. Defendant possessed a mixture or substance containing a detectable amount of cocaine.

2. Defendant possessed the cocaine with the specific intent to distribute it.

3. Defendant did this knowingly and intentionally.

Defendant is charged in Count III with violating 18 U.S.C. § 924(c)(1)(A)(ii). The relevant portion of that statute provides:

> (C)(1)(A) . . . any person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence . . . —
>
> > (i) be sentenced to a term of imprisonment of not less than 5 years

In order to convict defendant of the charge, the government must prove three essential elements:

1. that the defendant committed a drug trafficking offense;

2. that the defendant knowingly and intentionally possessed a firearm (either actual or constructive possession); and,

3. that the defendant possessed the firearm in furtherance

of that drug trafficking offense.

VOIR DIRE

The government has no specific requests for voir dire; however, it would request permission to pose questions in addition to those posed by the Court based upon responses provided by potential jurors.

ESTIMATED TIME FOR TRIAL

The government would estimate that its case-in-chief should take no more than two days.

RECORDED CONVERSATIONS

In this case, the government intends to introduce one audio recording of a conversation that occurred between defendant and Defendant Robles on May 9, 2006. A copy of that recording was provided to counsel for defendant on or about June 6, 2006. The recording is in Spanish. An English translation transcript of that recording will be provided to both the Court and defendant.

The admissibility of audio recordings is a matter within the sound discretion of the Court. United States v. Santana, 898 F.2d 821, 823-24 (1st Cir. 1990). To successfully challenge an audio recording on grounds of audibility, the inaudible parts must be so substantial as to make the remainder of the tape recording more misleading than helpful. United States v. DiSanto, 86 F.3d 1238, 1253 (1st Cir. 1996); United States v. Font-Ramirez, 944 F.2d 42, 46-47 (1st Cir. 1991); United States

v. Carbone, 798 F.2d 21, 24 (1st Cir. 1986).

A decision to permit transcripts of recorded conversations to be used by the jury is a decision within the sound discretion of the Court. It is the recording which is the evidence, not a transcript of the conversation. United States v. Morales-Madera, 352 F.3d 1, 7 (1st Cir. 2003); United States v. Campbell, 874 F.2d 838, 849-50 (1st Cir. 1989); United States v. Rengifo, 789 F.2d 975, 980 (1st Cir. 1986). Further, it is within the Court's discretion to allow introduction into evidence of English translation transcripts of conversations in Spanish and to permit the jury to take those transcripts with them as they deliberate. Rengifo, 789 F.2d at 983.

A defendant's own statements in a recorded conversation are admissible against him as admissions against interest. Fed.R.Evid. 801(d)(2)(A). The defendant cannot keep from the jury other segments of the conversation reasonably required to place the defendant's admissions in context. Such other parts of the conversation are properly admitted as reciprocal and integrated utterances to put the defendant's statements into perspective and make them intelligible to the jury and recognizable as admissions. These other portions of the conversation are not hearsay. They are not offered to prove the truth of the matter asserted, but only to give context to what the defendant is saying. United States v. Catano, 65 F.3d 219, 224 (1st Cir.

1995); United States v. McDowell, 918 F.2d 1004, 1007 (1st Cir. 1990). Such statements could also be admitted as adopted statements under Fed.R.Evid. 801(d)(2)(B).

The government wishes to alert the Court that defendant may seek to introduce exculpatory statements by defendant through his wife or another witness. Any such statements made by defendant may not be introduced by defendant, as they would constitute inadmissible hearsay. See United States v. Harwood, 998 F.2d 91, 98 (2d Cir. 1993) (rejecting a defendant's attempt to admit a co-defendant's statement as an admission by a party-opponent and recognizing "[t]he Government is the party opponent of both defendants."); United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982) ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible."). However, should the Court admit such hearsay, Rule 806 provides that the non-testifying declarant's credibility may be attacked as if the declarant had testified. This Rule applies to a non-testifying defendant. See United States v. McClain, 934 F.2d 822, 833(7th Cir. 1991) (government may impeach non-testifying defendant if defendant offers past exculpatory statements into evidence).

## ANTICIPATED LEGAL ISSUES

As the Court is aware, the defendant has not filed any motions. Thus there appear to be no issues related to the

admissibility of any of the evidence seized from the defendant.

Although defendant has not requested notice of evidence of other crimes, wrongs, or acts pursuant to Rule 404(b), notice of such evidence within the government's possession has been provided. It is not the government's intention to offer such evidence during its case-in-chief or rebuttal unless defendant raises the issue. A summary of the evidence within the government's possession is as follows.

On March 13, 2006 two confidential source (CS's) met with Medina in Providence. Medina provided one of the CS's with a free sample of cocaine. This took place in a basement near 255 Public Street. While in the basement, the sources observed Medina pull a baggie containing approximately 100 grams of cocaine from his pocket. During that meeting, Medina told one of the sources that the CS needed to tell Medina in advance the amount he wanted and that the CS wanted it "cooked." The drugs turned over by CS were tested by the DEA laboratory and found to be cocaine with a net weight of 0.92 grams.

On March 16, 2006, a CS called Medina and arranged to buy 50 grams of crack cocaine. They agreed to meet at Brillante Restaurant on Broad Street in Providence later that day. Medina told the CS that they could meet there as the owner of the restaurant knew what Medina did and the owner worked with Medina. The CS met with Medina at Brillante Restaurant and Medina had the

CS retrieve a baggie of crack from Medina's jacket pocket. The CS paid Medina $1,300 for the crack. The drugs turned over by CS were tested by the DEA laboratory and found to be cocaine base with a net weight of 49.2 grams.

On March 28, 2006 a CS contacted Medina and arranged to meet Medina at a restaurant in Providence in order to purchase 50 grams of crack cocaine. The CS was given $1,300 to make the drug purchase. The CS bought 50 grams of crack cocaine from Medina. The drugs turned over by CS were tested by the DEA laboratory and found to be cocaine base with a net weight of 49.2 grams.

On April 4, 2006 a CS contacted Medina and arranged to meet him at a restaurant in Providence in order to purchase 50 grams of crack cocaine. The CS and Providence Police Detective Juan Robles, acting in an undercover capacity, arrived at the restaurant and parked in front. Medina approached the car and got into it. The CS and Detective Robles bought 50 grams of crack cocaine from Medina for $1,300. The DEA laboratory tested the drugs and found them to be cocaine base with a net weight of 49.2 grams.

On May 2, 2006 a CS contacted Medina and arranged to meet him at the restaurant in Providence, this time to purchase 85 grams of crack cocaine. Medina met with the CS and Detective Robles. Medina sold them 85 grams of crack cocaine for $2,210. The DEA laboratory tested the drugs and found them to be cocaine

base with a net weight of 83.9 grams.

PENDING MATTERS

Information as to the evidence to be sought from experts has been provided in prior discovery letters. The identity of the narcotics expert will be provided as soon as that person has been identified. Counsel for Medina has indicated that they will stipulate as to the identity and weight of the drugs seized from the defendant. Likewise, Medina's counsel has stated that they will stipulate that the Bryco Arms 9 mm seized from defendant's residence is a firearm within the meaning of 18 U.S.C. § 921(a)(3). Based on those assurances, the government will not be calling either a chemist or firearms expert as witnesses.

The government will offer the testimony of law enforcement, who will testify, based on their extensive experience and training in the field of narcotics trafficking, to the methods and operation unique to narcotics trafficking and to the meaning of terminology and jargon used in the drug trade. Specifically, agents may testify to the price of "crack" cocaine in the Providence area; the manner in which it is manufactured, packaged, sold and used; the equipment used in narcotics trafficking; and, the "code", as well as other tactics used by drug dealers, to evade detection by law enforcement.

The First Circuit has consistently upheld the introduction of this type of agent testimony. See United States v. Maher, __

F.3d __, WL 1846572, at *8-9 (1st Cir. July 6, 2006) (upholding the admission of agent testimony regarding the meaning of words and numbers used in "Post It" notes seized from the defendant's vehicle, and testimony regarding the typical packaging of narcotics); United States v. Ayala-Pizarro, 407 F.3d 25, 28-29 (1st Cir. 2005) (affirming the district court's decision to admit agent testimony regarding the packaging of narcotics and how drug points operate); United States v. Reynoso, 336 F.3d 46, 49 (1st Cir. 2003) (opinion that drug quantity was consistent with possession with intent to distribute); United States v. Villarman-Oviedo, 325 F.3d 1, 13 (1st Cir. 2003) (in a narcotics case, agent allowed to testify to meaning of code words); United States v. Rivera-Rosario, 300 F.3d 1, 17 (1st Cir. 2002) (coded drug phrases); United States v. Valle, 72 F.3d 210, 214-15 (1st Cir. 1995).

Experienced investigators may also be "permitted to testify as experts on topics such as the structure of a criminal enterprise, the economics of the drug trade, and the handling of contraband." United States v. Sepulveda, 15 F.3d 1161, 1183-84 (1st Cir. 1993; United States v. Hensel, 699 F.2d 18, 38 (1st Cir.) (general practices of drug smugglers), cert. denied, 461 U.S. 958 (1983). Agent may also testify to "the conspirators' use of coded terms to denote drugs and about the meaning of those terms." Villarman-Oviedo, 325 F.3d at 12.

An experienced narcotics investigator may be allowed to testify that a particular substance is in the form of cocaine base known on the streets as "crack" cocaine. United States v. Robinson, 144 F.3d 104, 109 (1st Cir. 1998). Once the government introduces evidence regarding the chemical analysis, competent lay testimony remarking on the substance's distinctive appearance and texture, as well as identifying it as crack, is both admissible and sufficient to prove that the substance is crack cocaine. United States v. Richardson, 225 F.3d 46, 50 (1st Cir. 2000); United States v. Ferreras, 192 F.3d 5, 11 (1st Cir. 1999); United States v. Martinez, 144 F.3d 189, 190 (1st Cir. 1998). The government is not currently aware of any matters with which the Court should deal prior to the trial of this matter.

Respectfully submitted,

UNITED STATES OF AMERICA,

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ STEPHANIE S. BROWNE
STEPHANIE S. BROWNE
Assistant U.S. Attorney

CERTIFICATION OF SERVICE

On this 5th day of September, 2006, I caused the Government's Pretrial Memorandum to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

John M. Cicilline
381 Atwells Avenue
Providence, Rhode Island 02909
Jmcicilline387@aol.com

/s/ STEPHANIE S. BROWNE
STEPHANIE S. BROWNE
Assistant U.S. Attorney