**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF RHODE ISLAND**

UNITED STATES OF AMERICA :
:
v. : CR. No. 06-055ML
:
RAFAEL HUMERO MEDINA_____ :

GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO DEPART

Now comes the United States of America, by and through its attorneys, Robert Clark Corrente, United States Attorney, and Stephanie S. Browne, Assistant United States Attorney, and hereby responds to defendant's Motion to Depart. Although defendant has captioned the motion as one for departure, his memorandum refers only to those factors in 18 U.S.C. § 3553(a) which he claims require a sentence below the guideline range. Nowhere does he present any argument for any downward departures as that term is understood. Therefore, the government will address only what would constitute a reasonable sentence pursuant to the § 3553(a) factors.

Defendant posits a number of "grounds" for a sentence below the guideline range; this is his first conviction, he is married with three children, he will be approximately 60 years old when released (if he is sentenced to the statutory mandatory minimum of 10 years), and that he will likely be deported upon completion of his term of imprisonment. However, none of those grounds, either individually or in combination, are sufficient to justify a sentence below the guideline range.

In the wake of the Supreme Court's decision in United States v. Booker, 543 U.S. 220

(2005), the Sentencing Guidelines are advisory, not mandatory. Yet the First Circuit has made plain that "the guidelines continue [] to be an important consideration in sentencing." United States v. Jimenez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006). Moreover, "the guidelines cannot be called just 'another factor' in the statutory list, 18 U.S.C. §3553(a), because they are the only integration of the multiple factors, and with important exceptions, their calculations were based upon the actual sentences of many judges." Id. (emphasis in original). Nevertheless, "[a] court may sentence below the guidelines because the guideline sentence appears unreasonable in the 'particular case.'" United States v. Thurston, 456 F.3d 211, 218, 219 (1st Cir. 2006) (quoting Jimenez-Beltre, 440 F.3d at 518). Post-Booker, "the fact '[t]hat a [departure] factor is discouraged or forbidden under the guidelines does not automatically make it irrelevant when a court is weighing the statutory factors apart from the guidelines.'" United States v. Aitoro, 446 F.3d 246, 255 n. 9 (1st Cir. 2006) (quoting United States v. Smith, 445 F.3d 1, 4 (1st Cir. 2006)). "Nevertheless, [the Jimenez-Beltre] decision did treat the guidelines as more than just 'one factor among many,' deemed them the proper starting point for post-Booker sentencing, and said that the proponent of a variance had to support it." United States v. Navedo-Concepción, 450 F.3d 54, 57 (1st Cir. 2006) (quoting United States v. Jimenez-Beltre, 440 F.3d 514, 518-19 (1st Cir. 2006)).

An application of the factors listed in 18 U.S.C. § 3553(a) does not afford defendant the relief which he seeks. Those factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed-(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment ···; (3) the kinds of

> sentences available; (4) the kinds of sentence and the sentencing range established for ··· the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ···; (5) any pertinent policy statement ··· issued by the Sentencing Commission ···; (6) the need to avoid unwarranted sentence disparities among defendants with similar records ···; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1) requires the sentencing court to consider a defendant's background and the circumstances of the instant offense. In this case, such an examination affords defendant no relief. Defendant is responsible for 829.62 grams of crack cocaine: 87.7 grams in his possession at the time of his arrest, four prior sales involving a total of 231.4 grams, 9.37 grams found in his kitchen, and an additional 501.15 grams resulting from the conversion of just over $13,000 which he admitted was proceeds from crack cocaine sales. In addition he was found in possession of 62.4 grams of powder cocaine which had not yet been converted to crack cocaine.

By his own words and those of his family, defendant dealt crack cocaine as a business. Defendant has no history of either powder cocaine or crack cocaine abuse. PSR ¶ 35. Further, according to his family, defendant "did it to provide for them. He had worked two jobs, but did not feel he had enough money to give them a proper education. . . . In their opinion their father is not a criminal, just a man who needed to support his family." PSR ¶ 31. This view of defendant's children and wife of his conduct as acceptable is perhaps one of the most powerful arguments for a severe sentence. Clearly, his family does not view his behavior as wrong. In order to deter them as well as others similarly situated, the Court should impose a sentence within the guideline range.

Congress established a mandatory minimum sentence of 10 years for drug trafficking

offenses involving 50 grams or more of cocaine base. Here defendant has admitted he has dealt far more than that. On the day he was arrested he was in possession of nearly twice that amount - 84.6 grams on his person plus 9.37 grams found in his kitchen. One of his sales involved 83.9 grams, again well over the amount which triggers the 10 year mandatory minimum. His other two sales involved just under that amount at 49.2 grams each. In addition, defendant has admitted that he had proceeds from crack cocaine sales which were the cash equivalent of over 500 grams, that is, ten times the amount which requires imposition of the ten year mandatory minimum. Defendant is a large scale crack cocaine dealer. He deserves more time than the individual found to be involved with 50 grams of cocaine base. His relative culpability and responsibility are magnitudes larger than that which triggers the mandatory minimum.

Significantly, defendant cooked his crack cocaine in the kitchen of the house where he lived with his wife and children. Additionally, Medina kept a semi-automatic pistol along with two loaded magazines at the ready in his dresser drawer. He showed a startling lack of regard for the safety of those children. Medina either did not consider how this might affect any of his children or he did not care. Neither is a point in his favor.

As the Court recalls, it found that although this is defendant’s first conviction, he has made quite a lot of money dealing crack cocaine. By his own admissions, over $13,000 found in his home was proceeds from crack cocaine sales. The government is not seeking to increase the relevant conduct for which defendant is responsible; however, it is logical for the Court to infer that this cash represented profits from defendant’s distributions of crack cocaine. It would be likely that the actual volume of crack cocaine dealt in order to generate profits exceeding $13,000 was in excess of the 501.15 grams (its direct cash equivalent under the guidelines) as the

guideline equivalents necessarily include the cost of the raw material - powder cocaine.

As for his personal history, defendant is among a minority who come before this Court in that, although he has been convicted of a drug trafficking offense, he himself is not a drug user. He reported to Probation that his history of substance abuse involved occasional marijuana use for a period ending in 1993. PSR ¶ 35. Thus it is fair and reasonable for the Court to conclude that he had these drugs purely as a commercial venture - he did this for profit. His family and he have admitted as much. This was a business, a result of greed not of need brought on by drug addiction. Medina does not suffer from any mental health or emotional health problems. PSR ¶ 34. He is 50 years old and thus this offense can not be described as a youthful indiscretion. Further he describes his family in laudatory terms. He does not claim any childhood abuse or neglect. PSR ¶¶ 28, 29.

Defendant contends that, because he will likely be deported upon completion of his sentence, he should receive a sentence below the applicable guideline range. He is wrong. In a pre -Booker decision, the First Circuit held that likely deportability was not a basis for a downward departure. In United States v. Maldonado, 242 F.3d 1, 5 (1st Cir. 2001); the Court found that a defendant who is a deportable is still within the heartland of the guidelines absent something extraordinary. Maldonado, like this case, involved a defendant convicted of drug trafficking charges who was likely to be ordered deported at the completion of his federal term of incarceration.

> Although the Commission did not proscribe the district court's approach . . . , it obviously knew that deportable aliens commit crimes, that drug sentences are lengthy and that prisons are expensive. It is thus hard to avoid treating the Commission's failure to provide a discount as equivalent to rejecting a discount *as a matter of course*.
>
> In short, a deportable alien who commits a crime is still within the "heartland" of the

> guidelines, absent something more. If deportablity, expense, or some combination of the two justifies a departure, it would have to be on case-specific findings that made the case unusual. Under Koon v. United States, 518 U.S. 81, 96, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), the Sentencing Commission's silence might give the district court lattitude in the extraordinary case; but the common facts of a long sentence and likely deportation are not by themselves extraordinary."

Id. (Emphasis in original; internal citations omitted). Although defendant here seeks a variance, the holding in Maldonado is instructive. There is simply nothing extraordinary about defendant's situation. He is a drug trafficker who is deporatable. To sentence as defendant requests would place deportable aliens on a preferential footing concerning length of sentences.

18 U.S.C. § 3553(a)(2) sets forth a number of considerations for the sentencing court. Among those considerations are the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense; to provide adequate deterrence to criminal conduct; and to protect the public from further crimes at the hands of defendant. Given defendant's lack of any motivation for this crime other than a desire for money, it is necessary to sentence him adequately. Congress has set out its views of the dangers of crack cocaine. It has established a sentencing scheme through the United States Sentencing Commission and the guidelines produced by it that set more severe sentences for crack cocaine than for powder cocaine. In a case such as this one where defendant has no compelling reasons why he could not conform his conduct to the law, the factors in § 3553(a)(2) which go to deterrence, respect for the law, just punishment, and protection for the public, all serve individually and collectively as reasons why a sentence at the low end of the guideline range is reasonable and appropriate.

Contrary to the admonition in Jimenez-Beltre that the proponent of a variance has to

provide support for a sentence below the advisory guideline range, defendant has provided no support for such a decision. He has demonstrated no personal characteristics, no facts about the crime, nor any grounds to support a conclusion that a sentence below the range as set forth in the PSR would be reasonable or would meet the requirements of 18 U.S.C. § 3553(a).

For all of the foregoing reasons, defendant's motion should be denied. He should be sentenced to 188 months, the low end of the advisory range. Such a sentence is reasonable when all of the factors within the statute are considered and weighed.

Respectfully submitted,
UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
UNITED STATES ATTORNEY

/s/ STEPHANIE S. BROWNE
STEPHANIE S. BROWNE
Assistant United States Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000
(401)709-5001(fax)
Stepahanie.browne@usdoj.gov

CERTIFICATION OF SERVICE

On this 14thday of February, 2007, I caused the Government's Response to Defendant's Motion to Depart to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

John M. Cicilline
381 Atwells Avenue
Providence, Rhode Island 02909
Jmcicilline387@aol.com

/s/STEPHANIE S. BROWNE
STEPHANIE S. BROWNE
Assistant United States Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000
(401)709-5001(fax)
Stepahanie.browne@usdoj.gov