IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | Cr. No. 06-00055-01ML |
| VS. | § | Defendant Pro-se |
| | § | |
| RAFAEL HUMERO MEDINDA | § | |

MOTION OF PETITIONER'S FOR MODIFICATION OF REDUCTION OF SENTENCE BASED UPON AN INTERVENING POST-SENTENCING CHANGE IN THE UNITED STATES SENTENCING GUIDELINES PERTAINING TO COCAINE "CRACK" OFFENSES AND MARIJUANA EQUIVALENCY (AMENDMENT 715) AND (AMENDMENT 706) PURSUANT TO 18 U.S.C. §3582 (c)(2).

Now Comes Rafael Humero Medina #05748-070, Petitioner-Defendant acting pro-se in the above cause number asking this Honorable Court to construe this pleading liberally pursuant to Haines v. Kerner, 404 U.S. 519 (1972). Petitioner respectfully moves this Honorable Court for an order modifying and thus reducing his sentence of 188 months Imprisonment pursuant to this Court's Jurisdictional authority as set forth and contained in 18 U.S.C. (c)(2). Amendment (715) effective of May 1, 2008.

Petitioner-Defendant Medina contends that he is eligible for relief in a sentence reduction consideration because the Sentencing Commission 2D1.1 of (Application Note 10 (D)). And Amendment (715)

marijuana equivalence to determine base offense level. Involving cocaine base (I.E. "crack"). And other controlled substance has changed as of May 1, 2008, to compromise a primary goal of the Sentencing Reform Act, proportionality in sentencing to avoid unwarranted sentencing disparity.

The Defendant now seeks relief under (706) Amendment (715), (711), (713). All the new Amendment are retroactively applicable in this case as of May 1, 2008.

Prior to the Amendment, Defendant Medina drug offense base level was 36 for thus the 829.624 grams of cocaine base "crack" equates to 16.592.48 kilograms of marijuana one gram of cocaine equals 200 gram of marijuana so the 62.4 gram equals 12.48 kilograms of marijuana. The defendant then is accountable for a total of 16,604.96 kilograms of marijuana. This has been amended under (715).

Mr. Medina offense, Count 1, Possession with Intent to Distribute 50 grams or more of cocaine base , 21 U.S.C. §841(a)(1) and (b)(1)(A), A Class A Felony; Count 2, Possession with Intent to Distribute cocaine, 21 U.S.C. §841(a)(1) and (b)(1)(c) A Class C fenoly.

Guidelines Manual 2D1.1

At least 50 grams or less than 150 grams of cocaine base start at a Level 32. Under Amendment (715) Mr. Medina new base offense

level should be 30 not 36 under the old regime.

Prior to the Amendments, the sentencing commission converted crack to marijuana when other controlled substance were involved using a conversion factor of 20 kg of marijuana per 1.g of crack regardless of crack drug quantity. in Amendment 706, as revised by Amendment (711) (715), the Sentencing Commission established the following "New" crack conversion chart that varies by crack quantity (using the crack based offense Level in 2D1.1(c).

Base Offense Level Marijuana Equivalence

| Base Offense Level | Marijuana Equivalence |
| --- | --- |
| 38 | 6.7 Kg. of Marijuana |
| 36 | 6.7 kg. of marijuana |
| 34 | 6. Kg of marijuana |
| 32 | 6.7 kg. of marijuana |
| 30 | 14.kg of marijuana |
| 28 | 11.4 kg of marijuana |
| 26 | 5 kg. of marijuana |
| 24 | 16 kg. of marijuana |
| 22 | 15 kg. of marijuana |
| 20 | 13kg. of marijuana |
| 18 | 10 kg. of marijuana |
| 16 | 10 kg. of marijuana |
| 14 | 10 kg. of marijuana |
| 12 | 10 kg. of marijuana |

Applying the Amentments defendant's crack quantity is Level 30 pursuant to 2D1.1 (c)(4) (2008 Guidelines Manual). A Level 28 on the crack conversion chart is 5 kg. of marijuana per 1. gram.

Defendant challenges the validity of the crack conversion chart on grounds that it 1.) compromises proportionality, a fundamental premise for just punishment and a primary goal of the Sentencing Reform Act: 2.) produces an unwarranted sentencing disparity. Specifically, the crack conversion chart produces the absurb result of a drug defendant with offense conduct involving 99.896% of crack receiving a higher offense level than one whose offense involved 100% crack.

For example, a drug defendant that had the same amount of crack as the Defendant Medina 829.624 grams of cocaine base and no other controlled substance has base offense level of 30. See 2D1.1(c)(4), 2008 Guideline manual. However, in Defendant's case he receives a higher base offense level (36). However, in Defendant's case, he receives a higher base offense level because his offense conduct involved other controlled substance - marijuana that was only .104% of other controlled substance undermines the intended purpose of the Amendments to eliminate the crack vs. powder cocaine sentencing disparity. Clearly, the crack conversion chart produces an disproportionate sentence where the only difference is .104% of another controlled substance.

OFFENSE LEVEL COMPUTION

Base Offense Level: The Base offense level for a violation of 21 U.S.C. §846 is found at U.S.S.G. 2D1.1(a)(3) the base offense level is determined by using the Drug quantity Table set forth in subsection (c). The amount of drugs for which the defendant is accountable converts to 16.592.48 kg of marijuana pursuant to U.S.S.G. 2D1.1(c)(2). If the offense involved at least 10.000 kg

but less than 30.000 kg of marijuana, the base offense level is 36.

Adjustment Role in the offense and Illegal Enhancement of 6 more levels brought the Defendant up to Offense Level 40 - 3 points for the acceptance of responsibility for a total offense level of 37 at sentencing.

Defendant drug level under new Amendment 715 should start at 30 + 2 points of Illegal Enhancement for a gun to 32 - 2 points acceptance of responsibility the Defendant new base offense is Offense Level 30 Criminal History Category I, for a New Offense Level of 97-121, under Amendment 715 made retroactive as of May 1, 2008.

This compilation is a "ready-friendly" version of the amendments to the commentary to § 2D1.1 (Unlawlful Manufacturing, Importing, Export, or Trafficking (Including Possession with Intent to Commit These Offenses); (Attempt or Conspiracy) and policy statement §1B1.10 (Reduction in Term of Imprisonment as a Result of Cocaine Base also involved in the offense.

2D1.1 Unlawful Manufacturing, Importing, Exporting or Trafficking (Including possession with Intent to Commit these offenses) Attempt or Conspiracy.

Amended Guideline Range promulgated the Commission of April 16, 2008. Official text of the amendments will be posted on the Commission's website at www. ussc.gov and can be found in a forthcoming edition of the Federal Register. The official text of the amendments also will be incorporated into a forthcoming supplement to the Guidelines Manual.

These amendments take effect May 1, 2008. Until that date,

the court should apply 2D1.1 as set forth in the 2007 Guidelines Manual, and §1B1.10 as set forth in the Supplement to the 2007 Guidelines Manual effective March 3, 2008.

**Crack Cocaine**

1. **Synopsis of Amendment:** This amendment modifies the commentary to §2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy) to revise the manner in which combined offense levels are determined in cases involving cocaine base ("crack cocaine") and one or more other controlled substance. Spoecifically, Application Note 10(D) has resulted in certain sentencing anomolies in which some offenders have received a reduction greater than intended. (See U.S.S.C. Guidelines Manual, Supplement to Appendix C, Amendment 706) (November 1, 2007)).

In order to remedy these anomalies, this amendment modifies the Drug Equivalency Tables to provide that 1 gram of cocaine base equals 20 kilograms of marijuana, as it did prior t Amendment 706, and amends Application Note 10(D) to provide that the combined offense level for an offense involving cocaine base and one or more other controlled substance is determined initially in same manner as for other polydrug cases under Application Note 10(B). In order to effectuate the two-level reduction intended by Amendment 706, this amendment further provides that the resulting combined offense level is reduced by tow levels. However, the amendment

provides three exclusions to application of the two-level reduction. First, the two-level reduction does not apply if the offense involved 4.5 kilograms or more of cocaine base because the offense levels for such offenses were unaffected by Amendment 706. Second, the two-level reduction does not apply if the offense apply if the offense involved less than 250 mg of cocaine base in order to ensure that the offense level does not reduce below level 12, the minimum offense level in the Drug Quantity Table for offenses involving cocaine base. Third, the two-level reduction does not apply if it would result in a combined offense level that is less than the combined offense level that would result if the offense involved only the other controlled substance(s) (i.e., the controlled substance(s) other than cocaine base). This third exclusion ensures that offenses involving controlled substances other than cocaine base do not receive a lower offense level than they otherwise would receive merely because Amendment 715 should be applied retroactively for the reasons accompanying Amendment 713. (See USSC Guidelines Manual Supplement to 2007 Supplement to Appendix C, Amendment 713)(March 3, 2008)).

§1B1.10 Reduction in Term of Imprisonment as a Result of Amended Guideline Range (Policy Statement)

***

(c) Covered Amendments.-Amendments covered by this policy statement are listed in Appendix C as follows: 126, 130,

156, 176, 269, 329, 341, 371, 379, 380, 433, 454, 461, 484, 490, 499, 505, 516, 591, 599, 606, 657, 702 and 706 as amended by 711, and 715.

The Court in Kimbrough acknowledge that under the pre-November 1, 2007 guidelines, the sentence for a given quantity of crack is three (3) to six (6) times longer than a sentence for an equal quantity of powder. See kimbrough, 128 S. Ct. at 566; See also, Id., 575 ("The Crack Guidelines...do no emplify the Commission's exercise of its characteristic institutional role. In formulating Guidelines range crack cocaine offense, as we earlier noted. The commission looked to the mandatory minimum sentence set in the 1986 Act, and did not take account of Empirical data and national experience. In deed, the Commission it self has reported that the crack-powder disparity produces disproportionately harsh sanction, i.e., sentence for crack cocaine offense greater than necessary in light of the purpose sentencing set forth in 3553(a). Given all this, it would be an abuse of discretion for a district court judge to conclude when sentencing a particular defendant that the crack-powder disparity yields a sentence greater than necessary to achieve 3553(a)'s purposes even in a mine-run case. In United States v. Watkin, 2008 WL 152901 E.D. Tenn. Jan 14, 2008 in granting a two-level departure he held that the anomaly in the conversion tale led to a result that neither this court nor the Sentencing Commission would countenance and violated the guidelines proportionality principle. Id. at 3, 4.

The Court must apply the new amendment that took effect on May 1, 2008 and give Mr. Medina a much lower Guideline sentence not

given in his first sentence.

This Court must note that race has played a vital role in Blacks being given more time for crack cocaine than Whites for powder cocaine which has been noted by the Sentencing Commission as being the same drug this Court must be fair in its review of the 100 to 1 ration of crack vs. powder and the 20 to 1 that the Sentencing Commission has requested it would be a total miscarriage of Justice if this Court failed to look at the race issue between crack and powder which are in fact the same drug Mr. Medina only request this Honorable Court to be fair and just in the ends of justice in all things.

The Court Explained...

Booker explicitly stated that, as by now should be so clear, a mandatory system is no longer an open choice. Booker 543 U.S. at 263...Although the Court acknowledged that Congress had intended to create a mandatory Guidelines system, Booker stressed that this was not an option: (We) repeat, given today's constitutional holding mandatory guideline regime is not a choice that remains open...(We) have concluded that today's holding is fundamentally inconsistent with the Judge based sentencing system that Congress enacted into Law, Id., at 265...The Court never ever suggested, explicitly or implicitly, that the mandatory Guideline regime survived in any context.

In fact, the Court emphasized that the Guideline could not be construed as mandatory in one context and advisory in

another...the Court dismissed this notion, stating we do not see how it is possible to leave the Guidelines as binding in other cases...We believe that Congress would not have authorized a mandatory system in some cases and a non mandatory system in others, given the administrative complexities that such a system would create. Id at 266...In short Booker expressly rejected the idea that the Guidelines might be advisory in certain contexts and not in others, and congress has done nothing to undermine this conclusion.

Accordingly, because a mandatory system is no longer and open choice,...district courts are necessarily endowed with the discretion to depart from the Guidelines when issuing new sentence under 3582(c)(2). Mandatory Guidelines, the Ninth Circuit concluded, no longer exist, in this Context or any other.

Indeed, as the U.S. Government readily conceded in Kimbrough since the Guidelines are now Advisory....Courts may vary (from the Guidelines reanges) based solely on policy consideration including disagreement with the so called unconstitutional Guidelines.

Crack-powder cocaine disparity

The Supreme Court has ruled

The Court ruled 7-2 that Federal Judges can impose shorter sentences that under Federal Sentencing Guidelines for crimes related to "crack" cocaine making those sentences more equal to those for crimes involving powder cocaine. Justices upheld more lenient sentences imposed by judges who rejected federal sentencing guidelines as too harsh.

The problem associated with the 100 to 1 drug ratio are so

urgent and compelling that this amendment is promulgated as an interim measure to alleviate some of those problems...The Commission, however, views the amendment only as an interm solution to some of the problems associated with the 100-to-1 drug quantity ratio. It is neither a permanent nor a complete solution to the problem.

The Commission believes that there is no clear justification for the current statutory penalty scheme for powder and crack cocaine offenses, the Commission remains committed, however, to its recommendation in 2002 that any statutory ratio be on more than 20-to-1.

Mr. Medina previous sentence is 188 months, category I, Offense Level 36 plus 2 illegal points for a gun role that violates Blakely and Booker bring his Old Offense Level to 38 under 715 his starting Level should be 32, minus 2 points for Acceptance of Responsibility. Defendant new sentence should be 121 months of imprisonment and maybe this Honorable Court should conduct a fair sentencing hearing to ensure that justice will be served in all things and not just go on any other conclusory allegation which would be unjustified in many ways. This Court should not just go on what the Government has to say, 3582 proceeding is a simple vehicle through which appropriately sentenced prisoners can at least urge the Court exercise leniency and also the benefits of the Law by the Supreme Court.

This Court must understand that first the Court must look at 3582(c)(2) then it can go another point deeper to 3553(a) to determine more factors that may warrant an even much lower sentence

and this Court do has the power to do just that.

Accordingly, to the extent that U.S.S.G. 1B1.10 March 2008, would render any provision, commentary or policy statements of the Guidelines binding and mandatory on this Court, then it must give way under Booker or any of its progeny. Similarly, to the extent that 1B1.10 attempts to overrule or limit the Ninth Circuit's construction of 3582(c)(2), it is 1B1.10, and not Hicks that must give way.

The Supreme Court's remedial opinion in U.S.v. Booker, 543 U.S. 220, 245 (2005) instructed district courts to read the United States Sentencing Guidelines as "effectively advisory." See Kimbrough v. U.S., 169 L. Ed. 2d 481, 488 (2007). In accord with 18 U.S.C. §3553(a), the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence. Id. In Kimbrough, the Government acknowledged that the Guidelines "are now advisory" and that, as a general matter, "courts may vary from Guidelines disagreements with the Guidelines". Id. at 495.

Rafael Medina: The face behind
A Mechanical Sentencing Chart.

Rafael Medina is before this Court as a 51 year old Dominican Man who entered the Bureau of Prisons at the age of 47. he has spent 3 years in prison on a single drug conviction. Mr. Medina has a criminal history score of 0.

Mr. Medina is a father of 3 age ranges from 24 to 12. Mr. Medina is now paying the high price for the crime he regrettable committed some years ago. He neither poses a significant public

safety risk nor is he among the most serious and violent offender in the Federal system. He has no criminal history violent or otherwise and there is no indication that he will commit another crime in the future. And according to the data published by the United States Sentencing Commission those people with a criminal history category I have only a 13.8% chance of recidivism. Mr. Medina has a security classification of Low. Mr. Medina bring this Motion in good faith. He ask for this Court help just by being just and fair in this matter. Mr. Medina ask this Court for the bottom end of his new Guidelines.

CONCLUSION

Defendant Medina ask this Honorable Court to exercise its Supreme Court ruling 7-2 and its post-Booker discretion without consideration the challenge crack conversion chart that compromises proprortionality in sentencing; and give him a reduced reasonable sentence of 121 months consistent with 3553(a) and that which would accomplished the sentencing Reform Act goals of proportionality and unwarranted sentence disparity.

8-13-08

Respectfully submitted,

Rafael Humero Medina
Reg. No. 05748-070
F.C.I. Seagoville
P.O. Box 9000
Seagoville, Tx 75159-9000