UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RAFAEL HUMERO MEDINA  :
            :
vs.          :    CR No.  06-055-ML
            :
UNITED STATES OF AMERICA :

## MEMORANDUM AND ORDER

Mary M. Lisi, Chief United States District Judge.

  Rafael Humero Medina has filed motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 in the above proceeding.  For the reasons that follow, that motion is denied.

## FACTS AND BACKGROUND

  On May 9, 2006, police arrested Medina for drug possession as he was en route to make a sale of crack cocaine to a confidential informant (CI).  At the time of arrest Medina was in possession of more than 50 grams of crack cocaine.  In the course of a search of Medina's home performed on the date of his arrest pursuant to a search warrant, police found 9.37 grams of crack cocaine and 62.4 grams of powder cocaine, along with three small scales, inositol (a cutting agent) and baggies in the first floor kitchen of his home.  In Medina's bedroom on the second floor, agents also found a firearm in his dresser drawer and $22,030 in cash.

  On May 10, 2006, a grand jury returned a three-count indictment charging that Medina (1) possessed with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (Count I);  (2) possessed with intent to distribute an unspecified amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count II); and (3) possessed a 9 mm semi-automatic pistol in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count III).  Medina was represented by retained counsel, Attorney John M. Cicilline throughout all pertinent proceedings in this Court.

On July 28, 2006, Medina entered into a plea agreement. As originally signed, the agreement provided that Medina would plead guilty to Counts I and II, and that the Government would recommend a two-level reduction in the offense level for acceptance of responsibility and request a third level of reduction for timely acceptance of responsibility. (Orig. Plea Agreement, ¶¶ 1, 2.) The Government also agreed to dismiss the firearm charge, Count III. (Id. ¶ 2.e.) The plea agreement stipulated that the $22,030 in cash seized at his residence constituted proceeds from crack cocaine sales. (Id. ¶ 4.f.) The plea agreement further recited that the guidelines were only advisory; that this Court could impose any reasonable sentence in this matter up to the statutory maximum penalties; and that the Court was not bound by the Government's recommendations. (Id. ¶¶ 3, 12.) Finally, the plea agreement also contained an appeal waiver provision, under which Medina waived his right to file a direct appeal if the sentence imposed was within the guideline range determined by the Court or lower. (Id. ¶ 13.)

At the change of plea hearing on August 29, 2006, Medina disputed the amount of cash that constituted proceeds of the cocaine sales. As a result, this Court set the matter for trial. (See Transcript of Change of Plea Hearing conducted on August 29, 2006 ["8/29/06 Plea Tr."] at 11-14.)

Thereafter, on September 12, 2006, the day jury impanelment was scheduled, Medina signed an amended plea agreement. The amended agreement differed from the original agreement in two pertinent respects: (1) it provided that only a portion – $13,030 – of the $22,030 cash seized constituted drug proceeds; and (2) it deleted the provision providing for a third point of reduction for acceptance of responsibility. (Amended Plea Agreement at 3-4.) All other provisions remained the same, including the appeal waiver provision.

At a further change of plea hearing conducted on September 12, 2006, Medina disputed the quantity of crack cocaine involved in a prior drug transaction mentioned in the Government's

recitation of facts.  However, this Court made clear that whether the quantity in question was 65 grams, as Medina claimed, or 85 grams, as the Government claimed, his potential sentence was unaffected. (See Transcript of Change of Plea Hearing conducted on September 12, 2006 ["9/12/06 Plea Tr."] at 25-28.)  Prior to pleading guilty, Medina stated that his attorney had explained the plea agreement to him and that he understood that this Court could impose any reasonable sentence up to the statutory maximum. (Id. at 16-18.)  In addition, Medina acknowledged that no one had made any promises to him about what sentence he would receive, that his counsel had explained to him how the sentencing guidelines work, and that no one had coerced him into pleading guilty. (Id. at 18.)

The Presentence Report (PSR), prepared by the U.S. Probation Office calculated a guideline range of 188 - 235 months incarceration, based on a total offense level of 36 and a criminal history category of I.  The offense level included a two-level enhancement under USSG § 2D1.1(b)(1) for possession of a firearm in connection with a drug trafficking offense.  Prior to the sentencing hearing, Medina objected to the two-level enhancement, claiming that the gun belonged to his wife.

At the outset of the sentencing hearing on January 26, 2007, Attorney Cicilline stated for the record that he had informed Medina that he, Cicilline, had been indicted in Federal District Court in Massachusetts, and that Medina had the right to obtain different counsel. (See Transcript of Sentencing Hearing conducted on January 26, 2007 ["1/26/07 Sent Tr."] at 3.)  This Court also advised Medina that he had a right to change lawyers and that if he could not afford a lawyer, one would be appointed for him. (Id.)  Medina expressed his desire to continue with Cicilline as his lawyer. (Id.)

At the hearing, this Court heard testimony from two witnesses in connection with Medina's objection to the two-level firearm enhancement.  A Government agent testified that the gun was

found in Medina's dresser in the same room as the cash and upstairs from the drugs. Medina's wife

testified that the gun belonged to her and that she had purchased the firearm for protection from

break-ins while her husband was away in Santo Domingo. After hearing testimony and argument,

this Court credited the testimony of the agent over that of Medina's wife, and ruled that the two-level

enhancement for possession of a firearm in connection with Medina's drug trafficking was proper.

(Id. at 45-47.) Based on the unchanged offense level of 36 and a criminal history category I, this

Court accepted the PSR's advisory guideline range of 188 - 235 months imprisonment. (Id. at 47.)

This Court then continued the sentencing hearing in order to permit Attorney Cicilline to file a

written motion for a sentence below the advisory guideline range. See D.R.I. L.R. Cr. 32(a) (motion

for sentence outside the guideline range must be filed at least 11 days prior to sentencing hearing).

Counsel filed the motion and, at the continued sentencing hearing, argued that the Court

should impose the mandatory minimum sentence of ten years. This Court denied the motion and

sentenced Medina to 188 months imprisonment -- the bottom of the guideline range -- followed by

five years of supervised release. (See Transcript of Sentencing Hearing conducted on Feb. 23, 2007

["2/23/07 Sent Tr."] at 12-13.)

Medina appealed. The First Circuit summarily affirmed his conviction on the basis of the

appeal waiver provision in his plea agreement, finding that enforcing that provision would not result

in a "clear and gross injustice." Rafael Medina v. United States, Dkt. No. 07-1379 (1st Cir. June 4,

2008) at 1.

In August, 2008 Medina filed a motion for reduction of his sentence (Doc. # 38) pursuant to

18 U.S.C. § 3582(c)(2), in light of the crack cocaine amendments to the sentencing guidelines. See

USSG, Amendments 706 and 712. On January 6, 2009, the Court granted that motion in part and

re-sentenced Medina to 151 months imprisonment. See Memorandum and Order (Doc. # 43).

Thereafter, Medina timely filed the instant motion to vacate. In the motion he asserts: (1) that his counsel provided ineffective assistance during the plea and sentencing stages of the case; (2) that his counsel provided ineffective assistance due to an existing conflict of interest; and (3) that this Court improperly applied a two-level sentence enhancement based on weapon possession in connection with a drug offense. (See Memorandum of Law in Support of Petition for Relief Pursuant to 28 U.S.C. § 2255 ["Pet. Mem."] at 2-3.) The Government has filed a memorandum in support of its objection to the motion to vacate, and Medina has filed a reply. This matter is ready for decision.[1]

DISCUSSION

A.    General Principles

Title 28 U.S.C. § 2255 provides in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. §2255(a).

Generally, the grounds justifying relief under §2255 are limited. A court may grant such relief only if it finds a lack of jurisdiction, constitutional error or a fundamental error of law. See

---

[1]   Medina requests an evidentiary hearing on his claims. However, no hearing is required in connection with any issues raised by his motion to vacate, because, as discussed infra, the files and records of this case conclusively establish that the claims in the motion to vacate are without merit. See David v. United States, 134 F.3d 470, 477 (1st Cir. 1998) (district court properly may forego any hearing "when (1) the motion is inadequate on its face, or (2) the movant's allegations, even if true, do not entitle him to relief, or (3) the movant's allegations need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible.") (internal quotations omitted). See also Owens v. United States, 483 F.3d 48 (1st Cir. 2007)(same); Panzardi-Alverez v. United States, 879 F.2d 975, 985 n.8 (1st Cir. 1978) (no hearing is required where the district judge is thoroughly familiar with the case).

United States v. Addonizio, 442 U.S. 178, 184-185 (1979) ("An error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice.") (internal quotes omitted).

Moreover, a motion under § 2255 is not a substitute for a direct appeal. See United States v. Frady, 456 U.S. 152, 165 (1982). A movant is procedurally precluded from obtaining § 2255 review of claims not raised on direct appeal absent a showing of both "cause" for the default and "actual prejudice" -- or, alternatively, that he is "actually innocent" of the offense for which he was convicted. Bousley v. United States, 523 U.S. 614, 622 (1998) (citations omitted). See also Brache v. United States, 165 F.3d 99, 102 (1st Cir. 1999). Claims of ineffective assistance of counsel, however, are not subject to this procedural hurdle. See Knight v. United States, 37 F.3d 769, 774 (1st Cir. 1994).

Ineffective Assistance Claims

A defendant who claims that he was deprived of his Sixth Amendment right to effective assistance of counsel must demonstrate:

(1)    That his counsel's performance fell below an objective standard of reasonableness; and

(2)    [A] reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). See Cofske v. United States, 290 F.3d 437, 441 (1st Cir. 2002).

In assessing the adequacy of counsel's performance, the Court looks to 'prevailing professional norms.' A flawless performance is not required. All that is required is a level of performance that falls within generally accepted boundaries of competence and provides reasonable assistance under the circumstances. Ramirez v. United States, 17 F.Supp.2d 63, 66 (D.R.I. 1998)

(quoting Scarpa v. Dubois, 38 F.3d 1, 8 (1st Cir. 1994) and citing Strickland, 466 U.S. at 688). This means that the defendant must show that counsel's advice was not "within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985).

Under the second prong of the Strickland test, a defendant must show actual prejudice. Id. at 693. Where his conviction follows a guilty plea, a petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

B.     Alleged Ineffective Assistance at Plea Stage and Sentencing

Medina first claims that his counsel provided ineffective assistance during the plea stage and at sentencing by understating the risk and sentencing exposure Medina faced by entering into the negotiated plea agreement and by coercing him to admit facts that were not true. However, these assertions are belied by the record.

Taking the coercion aspect of this claim first, the record shows that during the plea proceedings, Medina disagreed with the Government's facts in only two instances, and both disagreements were fully addressed. When Medina disputed the Government's claim that all of the cash seized at his residence constituted proceeds of the charged drug transaction, this Court terminated the first change-of-plea hearing, and Medina's counsel subsequently negotiated an amended plea agreement which stated that only $13,030 of the $22,030 seized constituted drug proceeds. When Medina subsequently disputed the quantity of crack cocaine involved in a prior drug transaction mentioned in the Government's recitation of facts at his further plea hearing, this Court made clear that regardless of the quantity of drugs involved in that transaction, his potential sentence was unaffected. (See 9/12/06 Plea Tr. at 25-28.) Thus, there was no coercion and no prejudice flowing from the resolution of either dispute.

Moreover, Medina's coercion claim is refuted by his own statements made under oath in his colloquy at the change of plea hearing, during which he stated that he signed the plea agreement willingly and that no promises had been made to him.[2]

Finally, this Court notes that as part of his plea agreement, the Government agreed to dismiss the firearm count (Count III), which carried a mandatory consecutive sentence of five years. (Amended Plea Agreement, ¶ 2.e.)  This provision unquestionably was to Medina's benefit and would have been lost had he elected to go to trial.

In short, Medina can show neither deficient performance nor prejudice with respect to his counsel's performance in connection with his decision to sign a plea agreement and plead guilty for his offenses.  Thus, this ineffective assistance claim fails.

C.      Ineffective Assistance Due to Conflict of Interest

Medina separately contends that his counsel provided ineffective assistance in connection

---

[2]      After this Court reviewed in detail the provisions of Medina's amended plea agreement, the following exchange occurred:

Q:      Do you have any questions about the plea agreement?
A:      No, your Honor.
Q:      Has anybody made any promises to you about what sentence you're going to get in this case?
A.      Not tacitly.
Q:      Well, what do you mean by that?
A:      What I mean is that the terms were explained to me and I accepted them.
Q:      Okay.  But nobody's made a promise to you about what sentence you're going to get in this case, have they?
A.      No, your Honor.
Q:      Mr. Cicilline explained to you how the sentencing guidelines work, did he not?
A:      Yes, your Honor

            *         *         *

Q:      Okay.  Now, has anyone attempted in any way to force you to plead guilty in this case?
A.      No, your Honor.  No, your Honor.  It is something that I am doing motu pro prio.
        THE COURT: I'm sorry, I didn't hear it?
        THE INTERPRETER: It is something that I do motu pro prio.
Q:      What does that mean?
A:      Of my own will.

(9/12/06 Plea Tr.  at 18-19.)

with his sentencing proceedings due to a conflict of interest.  Specifically, he claims that Attorney

Cicilline failed to raise two arguments -- (1) that Medina should have received a further one-level

decrease for timely acceptance of responsibility; and (2) that Medina was entitled to the safety valve

reduction despite the fact that the firearm enhancement was found applicable -- due to Cicilline's

own indictment.

The short answer to this claim is that at the outset of his sentencing hearing, Medina

expressly waived any conflict arising from his counsel's indictment.  The record of that proceeding

clearly shows that Medina acknowledged being informed that his counsel had been indicted in

another court on an unrelated matter and that he wished Attorney Cicilline to continue as his counsel,

thus waiving his right to new counsel.[3]  Medina cannot now seek to undo that decision.  See United

States v. Saccoccia, 58 F.3d 754, 772 (1st Cir. 1995) (defendant who waives conflict of interest as

to his chosen counsel "cannot later repudiate [that waiver] simply because his case curdles").

Moreover, even if Medina had not expressly waived the conflict of interest, his ineffective

assistance claim still fails.  To show a conflict of interest warranting relief, a petitioner "must

---

[3]   At the sentencing hearing on January 26, 2007, the following colloquy took place:

| | |
|---|---|
| THE COURT: | Before we begin with the sentencing hearing, Mr. Cicilline, I will ask you to place on the record what, if anything, you have explained to your client with regard to your personal situation. |
| MR. CICILLINE: | Thank you, your Honor.  Your Honor, last week I went up to see Mr. Medina at the Wyatt Center.  I explained to him that I was indicted out of the Federal Court in Boston.  I explained to him that he had a right to get a different attorney if he wished [to do] so.  He indicated to me that he was satisfied with my representation of him and to appear with him to be sentenced today |
| THE COURT: | Mr. Medina, you understand that you do have a right to change lawyers and that if you cannot afford an attorney, the Court will appoint counsel for you? |
| THE DEFENDANT: | Yes, your Honor. |
| THE COURT: | Is it your desire to continue today with Mr. Cicilline as your lawyer? |
| THE DEFENDANT: | Yes, your Honor. |

(1/26/07 Sent. Tr. at 3.)

demonstrate that an actual conflict of interest adversely affected the adequacy of his representation." Reyes-Vejerano v. United States, 276 F.3d 94, 97 (1st Cir. 2002) (citing Cuyler v. Sullivan, 446 U.S. 335, 348-50 (1980)). That is, he must show that: "(1) the attorney could have pursued a plausible alternative defense strategy and (2) the alternative trial tactic was inherently in conflict with or not pursued due to the attorney's other loyalties or interests." Id. (quoting Familia-Consoro v. United States, 160 F.3d 761, 764 (1st Cir. 1998)(further citations omitted).[4]

Here, neither of the claimed deficiencies in counsel's performance warrants relief on the basis of conflict of interest. As to the alleged failure to request a third point of reduction for timely acceptance of responsibility, Attorney Cicilline filed a written objection to the PSR on this point and pressed the objection at the sentencing hearing. (See 1/26/07 Sent. Tr. at 4.) However, as this Court pointed out (id.), the decision whether to request the third point was not within counsel's control but rather was within the Government's sole discretion. See USSG § 3E1.1(b) (providing for a third point of reduction upon Government's motion where defendant timely indicates an intent to plead guilty, "thereby permitting the government to avoid preparing for trial"). Given that Medina deferred his guilty plea until the eve of jury impanelment due to his dispute concerning the cash seized at his residence, the Government was understandably unwilling to agree to request the third point on Medina's behalf.

Similarly, Medina cannot show that counsel's performance as to the safety valve issue resulted from any conflict of interest. At the sentencing hearing Attorney Cicilline asserted that the assessment of the two-level firearm enhancement in effect precluded Medina from any entitlement to the safety valve. (1/26/07 Sent. Tr. at 47.) Even if counsel's assertion was mistaken as a matter

---

[4] While it is true that defense counsel in Reyes-Vejerano was merely under investigation rather than under indictment, the test articulated in that case is fully applicable to the instant situation.

of law, see United States v. Anderson, 452 F.3d 87 (1st Cir. 2006) (noting that the burdens for establishing the applicability of the safety valve reduction and for the weapon enhancement are different),[5] Medina has made no showing that this error was caused by his counsel's conflict of interest.

Moreover, even if counsel's inaccurate assertion independently constituted deficient performance, Medina suffered no prejudice, for two reasons. First, Medina would not have qualified for the safety valve even if his counsel had requested it, given this Court's conclusion that the firearm was related to his drug offense and the prerequisite for treatment under the safety valve that the defendant "not . . . possess a firearm or other dangerous weapon . . . in connection with the offense." 18 U.S.C. § 3553(f)(2); USSG § 5C1.2(a)(2). Second, this Court firmly indicated at sentencing that it was unwilling to impose a sentence below the bottom of the advisory guideline range (188 months) in any event, much less below the mandatory 10-year minimum that applied. (See 2/23/07 Sent. Tr. at 11-13.)[6]

Finally, Medina has not otherwise shown that his counsel's performance was negatively impacted due to any desire to avoid alienating the Government while he was under federal indictment. Attorney Cicilline got the Government to drop Count III of the indictment, objected to the firearm enhancement, called Medina's wife to testify that she was the sole owner and possessor

---

[5]   In Anderson, the First Circuit discussed the differences in the respective burdens of proof for imposing the two-level firearm enhancement pursuant to USSG § 2D1.1(b)(1) and eligibility for the safety valve. The court noted that burden for the application of the safety valve (which requires a defendant to establish by a preponderance of the evidence that he did not possess the firearm in connection with the offense) was somewhat less than a defendant's burden to show that it was 'clearly improbable' that a gun was used in connection with the offense so as to defeat the application of the firearm sentencing enhancement under USSG § 2D1.1(b)(1). 452 F.3d at 90-91. Anderson was decided on June 29, 2006, approximately seven months before Medina's sentencing.

[6]   The fact that this Court subsequently reduced Medina's sentence to 151 months solely on the basis of the crack cocaine Guideline Amendments does not impact this analysis.

of the firearm, and cross-examined the officer who recovered the firearm from Medina's bedroom. Moreover, this Court notes that the office that indicted Attorney Cicilline was not the same office prosecuting Medina's case, and that it was highly unlikely that counsel's performance at Medina's sentencing would tend to influence the Massachusetts U.S. Attorney's Office in Cicilline's unrelated Boston case.

Thus, Medina's ineffective assistance claim based upon his counsel's conflict of interest likewise fails.

D.   Improper Sentence Enhancement for Weapon Possession

Medina further claims that this Court improperly applied the two-level firearm enhancement under USSG § 2D.1.1(b)(1).   Medina contends that the enhancement was applied based on an unloaded gun that he never used or handled in connection with his drug offense or otherwise.

This claim may be quickly dismissed.   In his plea agreement, Medina waived his right to appeal claims such as this one, so long as his sentence was within the guideline range or lower, which it was.   That waiver was upheld by the First Circuit, which found no miscarriage of justice in enforcing the waiver.   See Medina, Dkt. No. 07-1379, at 1.

Even absent a waiver, a § 2255 movant is procedurally barred from raising issues that could have been presented on direct appeal absent a showing of both "cause" for the default and "prejudice" or, alternatively, that he is "actually innocent." Brache, 165 F.3d at 102.   See also Frady, 456 U.S. at 165 (a § 2255 proceeding will not do service for a direct appeal).   Medina has made no such showing here.   Moreover, claims of sentencing guideline error usually are not cognizable under § 2255. Knight, 37 F.3d at 773-74; Williams v United States, 2007 WL 1018601 (E.D. Mo. Mar. 29, 2007) at *18 (sentencing claims are not properly brought under § 2255).

Furthermore, even if this Court were to address the merits of this claim, it fails. The applicability of the USSG § 2D1.1(b)(1) enhancement was the subject of a full hearing at which two witnesses testified. This Court's findings are fully supported by the record.

### CONCLUSION

In view of the foregoing considerations, Medina's motion to vacate under § 2255 is hereby DENIED and DISMISSED.

SO ORDERED:

_____
Mary M. Lisi
Chief United States District Judge

August 27, 2009